

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00030-CV

TDINDUSTRIES, INC.                                                              APPELLANT

V.

CITICORP NORTH AMERICA, INC.                                         APPELLEE

------------

## FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

This is an interlocutory appeal of the trial court's order denying appellant TDIndustries, Inc.'s motion to dismiss appellee Citicorp North America, Inc.'s case involving negligence against TDI.[1] In three issues, TDI argues that the trial court abused its discretion by failing to dismiss it from this case. We will reverse and remand.

------------

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon 2008).

## II. BACKGROUND

Citicorp filed suit against numerous parties, including TDI, on February 26, 2009. Citicorp's suit sought damages against TDI and others related to the installation and retrofit of complex machinery and equipment. Among other things, recovery was sought for damages caused by a fire involving a generator retrofitted with a selective catalytic reduction ("SCR") exhaust scrubber for emissions reduction purposes, which TDI allegedly installed. Citicorp claims the SCR produced more "backpressure" than anticipated, causing the fire. Specifically, Citicorp's petition alleged that TDI "owed a duty to [Citicorp] to exercise reasonably prudent and ordinary care in the installation [of the SCR]." Citicorp also pleaded that TDI committed the following negligent acts:

    a.    Failing to adequately and properly inspect the generators and their respective exhaust systems, which inspection would have provided [TDI] with the actual backpressure for the [SCR];

    b.    Failing to verify existing backpressure conditions and field conditions of the exhaust system prior to the installation of the [SCR];

    c.    Failing to take reasonable and necessary precautions so as to prevent the risk of harm to [Citicorp's] personal property;

    d.    Failing to perform an exhaust system back pressure test following the [SCR's] exhaust scrubbers retrofit; and

    e.    Otherwise, failing to use due care under the circumstances.

Citicorp filed its first amended petition on April 1, 2009. This petition included a certificate of merit concerning the alleged professional engineering negligence of another defendant regarding the installation and retrofit of the SCR, but Citicorp did not file a certificate of merit regarding its claims against TDI. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002 (Vernon 2005). Citicorp again amended its petition on July 29, 2009, without including a certificate of merit concerning its claims against TDI. Believing that Citicorp was required to file a certificate of merit pertaining to Citicorp's claims against it, TDI filed a motion to dismiss. In its motion, TDI alleged that Citicorp was in fact complaining of acts or omissions by TDI that implicate engineering services and the applicable standard of care for rendering engineering services; thus, a certificate of merit was required. Citicorp did not dispute in its response, nor now on appeal, that TDI is a "licensed or registered professional," that it did not file a certificate of merit regarding its claims against TDI with its original or live petition, or that it failed to file a certificate of merit setting forth specifically a negligent act, error, or omission of TDI. Instead, Citicorp responded that "the testing and verification of backpressure conditions does not *necessarily* involve the provision of professional services by a licensed professional engineer." [Emphasis added.] Citicorp also noted that in TDI's initial responses to disclosure, it denies having engineering or design obligations or backpressure testing responsibilities. Both parties filed affidavits in support of their positions. The affidavits were filed by

3

Citicorp's expert, Timothy B. Hatch, and TDI's senior vice president responsible for engineering, Larry Stephen Canter. Canter averred that in his professional opinion, the allegations against TDI would necessarily involve the use of engineering skill and duties. Hatch averred that the allegations against TDI do "not necessarily involve the provision of professional services by a licensed professional engineer." On January 29, 2010, after hearing TDI's motion, the trial court entered an order denying TDI's motion to dismiss. This appeal followed.

## III. DISCUSSION

In three issues, TDI complains that the trial court abused its discretion by denying its motion to dismiss. TDI complains that Citicorp seeks damages against TDI, other than for the payment of fees, for alleged errors or omissions arising out of the provision of professional services by TDI; that the trial court disregarded the pleaded facts and TDI's affidavit in support of its position; and that the trial court misconstrued or misapplied section 150.002 of the Texas Civil and Practices Remedies Code and section 1001.003 of the Texas Occupations Code when it determined that Citicorp's claims against TDI did not require a certificate of merit. Citicorp responds that it does not contend that TDI provided any professional engineering services related to the retrofit and that TDI admitted in its responses to request for disclosure that it did not have any engineering or design obligations related to the retrofit. We agree with TDI.

4

**A.    Standard of Review**

We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Palladian Bldg. Co., Inc. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 (Tex. App.—Fort Worth 2005, no pet.). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). A trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

Statutory construction is a question of law which we review de novo. *Palladian Bldg.*, 165 S.W.3d at 436. In construing a statute, our primary objective is to determine and give effect to the legislature's intent. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). We look at the statute's plain and common meaning because we presume the legislature intended the plain meaning of its words. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). We presume that the legislature intended the entire statute to be effective. *See* Tex. Gov't Code Ann. § 311.021 (Vernon 2005). "[I]t is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *Tex. Workers' Comp. Ins. Fund v.*

*Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000) (quoting *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963)). Courts should not adopt a construction that renders statutory provisions meaningless. *Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). Once we determine the proper construction of a statute, we determine whether the trial court abused its discretion in the manner in which it applied the statute to the instant case. *Palladian Bldg.*, 165 S.W.3d at 436.

## B. Former Section 150.002 Applies to this Case

The applicable version of former section 150.002 provides,[2] in relevant part:

§ 150.002. Certificate of Merit

(a) In any action . . . for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party . . . licensed professional engineer competent to testify, holding the same professional license as, and practicing in the same area of practice as the defendant, which affidavit will set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim. . . .

(b) The contemporaneous filing requirement of Subsection (a) shall not apply to any case in which the period of limitation will expire within 10 days of the date of filing and, because of such time

---

[2]The Eighty-first Texas Legislature amended section 150.002, effective as of September 1, 2009. *See* Act of June 19, 2009, 81st Leg., R.S., ch. 789, §§ 3–4, 2009 Tex. Gen. Laws 1989–1990 (effective Sept. 1, 2009). Because this suit was filed on February 26, 2009, these amendments do not apply to this case. *See id.* All citations to the statute in this opinion are to the version in effect prior to the 2009 amendments. Both parties agree that the version in effect prior to the 2009 amendments applies in this case.

6

constraints, the plaintiff has alleged that an affidavit . . . could not be prepared. In such cases, the plaintiff shall have 30 days after the filing of the complaint to supplement the pleadings with the affidavit. The trial court may, on motion, after hearing and for good cause, extend such time as it shall determine justice requires.

. . . .

(d) The plaintiff's failure to file the affidavit in accordance with Subsection (a) or (b) shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice.

Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348; Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370 (amended 2009).

Former section 150.002(a) requires a certificate of merit only in actions or arbitration proceedings "for damages arising out of the provision of professional services by a licensed or registered professional." *Id.* By its plain language, the certificate-of-merit statute is compulsory, not discretionary. Although the statute gives the trial court discretion to allow a plaintiff more time in which to obtain the certificate in the one circumstance identified, it does not grant the trial court discretion to waive the requirement altogether, and it mandates dismissal of any claims for which a certificate is required and not produced. *See id.*; *see also UOP, L.L.C. v. Kozak*, No. 01-08-00896-CV, 2010 WL 2026037, *4 (Tex. App.—Houston [1st Dist.] May 20, 2010, no pet.) (mem. op.).

In determining what "the provision of professional [engineering] services" in former section 150.002(a) means, we are guided by the Texas Occupations

7

Code's definition of the practice of engineering. *See Ashkar Eng'g Corp. v. Gulf Chem. & Metallurgical Corp.*, No. 01-09-00855-CV, 2010 WL 376076, at *9 (Tex. App.—Houston [1st Dist.] Feb. 4, 2010, no pet.) (mem. op.) (looking to Texas Occupations Code to ascertain same issue, with respect to practice of engineering); *see also Curtis & Windham Architects, Inc. v. Williams*, 315 S.W.3d 102, 108 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (same, with respect to practice of architecture). The occupations code defines the practice of engineering as "the performance of . . . any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work." Tex. Occ. Code Ann. § 1001.003(b) (Vernon Supp. 2010). The practice of engineering includes, among other things, design of engineering works or systems; engineering for construction of real property; engineering for preparation of operating or maintenance manuals; and "any other professional service necessary for the planning, progress, or completion of an engineering service." *Id.* § 1001.003(c).

Thus, based on the definitions provided in the occupations code, and the plain language of former section 150.002(a), a claim for damages asserted against a professional engineer arises out of the provision of professional services (and thus requires a certificate of merit) if the claim implicates the

8

engineer's education, training, and experience in applying special knowledge or judgment. *See Gomez v. STFG, Inc.*, No. 04-07-00223-CV, 2007 WL 2846419, at *3 (Tex. App.—San Antonio Oct. 3, 2007, no pet.) (mem. op.) (holding that claims for tortious interference, conspiracy, breach of contract, wrongful termination, and breach of fiduciary duty, loyalty, and good faith and fair dealing did not require certificate of merit because they did not "implicate a professional engineer's education, training, and experience in applying special knowledge or judgment"). Conversely, if a plaintiff's claim for damages does not implicate the special knowledge and training of the subject professional, it cannot be a claim for damages arising out of the provision of professional services. *See Williams*, 315 S.W.3d at 108.

As pleaded here, Citicorp's negligence claim implicated TDI's engineering education, training, and experience because it was premised on TDI's knowledge of the installation and testing of complex machinery and equipment; namely, the retrofitted SCR exhaust scrubber installed and tested for emissions reduction purposes. That is, it was TDI's engineering expertise that underlay its alleged liability for having failed to "exercise reasonably prudent and ordinary care in the installation" of the SCR, and for failing to "adequately and properly inspect[,] . . . verify[,] . . . take reasonable and necessary precautions so as to prevent harm to[, and] perform" backpressure testing of the SCR. Additionally, the occupations code defines the practice of engineering services to include "engineering for

9

preparation of an operating or maintenance manual"; "a service, . . . analysis, or other work performed . . . in connection with a utility, structure, building, machine, equipment, process, system, work, project, or industrial . . . product or equipment of a mechanical . . . [or] hydraulic . . . nature"; and "any other professional service necessary for the . . . progress, or completion of an engineering service"—all of which describe many of Citicorp's negligence allegations against TDI as pleaded. *See* Tex. Occ. Code Ann. § 1001.003(c)(8), (10), (12). Therefore, we conclude that Citicorp's negligence claims, as pleaded, were claims for damages arising out of the provision of professional services by a licensed or registered professional engineer within the meaning of former section 150.002(a).

Citicorp argues that TDI cannot contend that it provided professional engineering services, thus requiring Citicorp to file a certificate of merit, because in its response to disclosure, TDI denied having any engineering obligations in its installation and testing of the SCR. We conclude that discovery has no bearing on whether a certificate of merit is required. First, the statute itself contemplates that the determination of whether a certificate of merit is required is determined at the time the claim is filed, before any discovery. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a), (e) ("[T]he plaintiff shall . . . file [the certificate of merit] with the complaint[;] . . . failure to file . . . shall result in dismissal of the complaint."). With this in mind, we conclude that the proper approach when determining whether a certificate of merit is required is to look solely at the

10

pleadings to determine the nature of the claim and not at discovery between the parties. Second, Texas law in the area of medical expert reports—an area analogous to the case law applicable to this case—also leads us to conclude that we are to look to the nature of the claim pleaded only in order to determine whether a certificate of merit is required. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005) (reasoning that a court is to look to the nature of the claim only to determine whether a claim is in fact a health care liability claim requiring a medical expert report); *see also Landreth v. Las Brisas Council of Co-Owners, Inc.*, 285 S.W.3d 492, 499–501 (Tex. App.—Corpus Christi 2009, no pet.) (analogizing 150.002's certificate of merit with medical expert report).

Because we conclude that the negligence claims alleged against TDI are both claims for damages arising out of the provision of professional services by a licensed or registered professional and claims for negligent acts, errors, or omissions arising out of the provision of those services, Citicorp was required to file a certificate of merit with its claims against TDI. Having failed to do so, Citicorp's claims against TDI should have been dismissed. We hold that the trial court abused its discretion by denying TDI's motion to dismiss Citicorp's claims against TDI. Thus, we sustain TDI's three issues.

11

## IV. Conclusion

Having sustained TDI's three issues, we reverse the trial court's order and remand the case with instructions for the trial court to dismiss Citicorp's claims against TDI.


                                        BILL MEIER
                                        JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

DELIVERED:  April 7, 2011



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00030-CV

TDINDUSTRIES, INC.                                                                  APPELLANT

V.

CITICORP NORTH AMERICA, INC.                                                        APPELLEE

----------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

----------

## DISSENTING OPINION

----------

Because the majority begins with the assumption that only an engineer could adequately perform the acts alleged not to have been performed, I must respectfully dissent. The majority relies on three subsections in the definition of the practice of engineering, none of which I believe apply to Citicorp's claims.

Subsection (c)(8) includes in the definition of the practice of engineering "*engineering* for preparation of an operating or maintenance manual."[1]  In other words, if an engineer practices engineering, even if the work is for purposes of preparation of a manual rather than for a physical client project, the work is still considered the practice of engineering.

Subsection (c)(12) includes "any other professional service necessary for the planning, progress, or completion of an *engineering* service."[2]  This definition makes all stages of the provision of an engineering service part of the practice of engineering, but it does not on its face relate to any task not necessary for the provision of what is otherwise an engineering service.

Subsection (c)(10), as the majority states, includes as the practice of engineering "a service, . . . analysis, or other work performed . . . in connection with a utility, structure, building, machine, equipment, process, system, work, project, or industrial . . . product or equipment of a mechanical . . . [or] hydraulic . . . nature."[3]  By relying on this section, the majority appears to conclude that because the definition of the provision of engineering services can include work performed in connection with a machine or equipment of mechanical or hydraulic nature, any work performed in connection with any machine or equipment of a

---

[1]Tex. Occ. Code Ann. § 1001.003(c)(8) (Vernon Supp. 2010) (emphasis added).

[2]*Id.* § 1001.003(c)(12) (emphasis added).

[3]*Id.* § 1001.003(c)(10).

2

mechanical or hydraulic nature is necessarily engineering, and therefore Citicorp's claims must be based on the provision of engineering services. I disagree. Not all work on all mechanical equipment can be engineering; if it were, even a mechanic changing the oil in a customer's car would be practicing engineering, and a suit over a negligent oil change would require the expert report of an engineer. Such work is not engineering if it does not require "engineering education, training, and experience" to be adequately performed.[4] To hold otherwise would lead to an absurd result. The majority, however, does not explain why the alleged improperly omitted acts in this case required the education, training, and experience of an engineer to be adequately performed, or why the trial court erred by concluding, after reviewing affidavits of Citicorp's expert and TDI's senior vice president, that they did not. Because I believe that Citicorp did not assert claims for damages arising out of the provision of professional engineering services, I respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

DELIVERED: April 7, 2011

---

[4] *Id.* § 1001.003(b).

3